DISTRICT COURT.                          MARCH 31, 1862.
                        ADMIRALTY.

## THE CALHOUN AND CARGO.

1. Among property taken from a prize vessel and sent in for adjudication, was certain private correspondence of a political nature, thought to be of value to the government. It enclosed bills of exchange. *Held,* that the bills of exchange should remain in judicial custody, and that the whole of the correspondence, including such parts as, although unimportant, showed only personal connection with the more important, should be sent to the Secretary of the Navy for transmission to the State Department.

2. The vessel in this case was not sent in for adjudication, but detained in the service of the United States. An appraisement of it was made under the authority of the captors, and the officers of the Navy Department which was transmitted to the Court. *Held,* that no claimant having intervened and assented to the substitution of the appraisement, the court had no jurisdiction to receive the amount thereof and adjudicate thereon at the suit of the United States.

### PRIZE.

### CADWALADER, J.

This vessel appears to have left Havana on 20th January last and to have been captured on the 23d of that month by the United States gunboat Samuel Rutan at the mouth of the Mississippi river, where she had been run by her navigators ashore and set on fire and abandoned. That her destination was New Orleans appears from papers on board. The fires were extinguished by the naval captors. The captured vessel was not sent in for adjudication. The cargo was in part placed on board of the capturing vessel and sent in her by Captain Bailey of the Navy of the United States with letters to the Judge of the Southern District of New York, whither she was destined for adjudication. The prize master by the direction of Captain Bailey proceeded to Ship Island, with a letter to Flag Officer McKean, commanding the naval force in those waters. Captain McKean, by his order of 18th February, 1862, directed that the captured property, consisting as above of part of the cargo of the prize steamer, should be brought into this port. It was accordingly brought hither

and reported for adjudication on the 10th of March, inst. Under the usual reference to the prize commissioner, his report was returned to the court on the 26th inst. Having considered it and the documents on board of the captured vessel, my attention has been directed particularly to certain papers addressed to the Secretary of the Navy, what Captain Bailey in one of his letters to the Judge of the Southern District of New York describes as "of a political nature and interesting to the department." In this letter Captain Bailey requests the judge after he shall "have looked over them," to forward them immediately to Washington. These papers have not been seen by the prize commissioner. I have lost no time in looking over them. Among them I find some letters from a resident of California, and his wife and their child to the wife's father in Charleston, South Carolina, and with some of her husband's letters, bills of exchange for two small remittances from him to her father. Being of opinion that the bill of exchange ought to be detained in judicial custody, and that all the correspondence of these parties in California should also be detained, I have separated them from the other papers in the package, which was addressed to the Secretary of the Navy. These other papers I would have thought it my duty to transmit to the State Department if they had come without any request of the naval officer transmitting them. Some of them are of political importance, perhaps great importance. The others, though private and unimportant, have a personal connection with the important papers which makes it proper that they should all remain together. I have concluded that as more of them are, in any respect, proprietary documents of the vessel or cargo, and so far as not of a political, are strictly of a private character, they should be transmitted to the Navy Department by the head of which, information of the fact will doubtless be communicated to the State Department. I am of opinion that until final judgment shall have been rendered in the cause in this court the papers should be kept in the State or Navy Department, where they may be at hand, if they

should hereinafter be required by the Court. I am induced to make this remark by an examination of the papers in the case of The Tulip, of which the report in 3d Washington Circuit Court, 182, 183, does not contain all that I consider important upon the question on which Judge Washington gave no opinion. I have considered this opinion of the Court below in that case as well as the opinion of the Appellate Court.

The clerk will therefore transmit the papers in a canvas bag labelled "Judge of the United States District Court, New York, for the Hon. Gideon Wells, Secretary of the Navy," to the Secretary of the Navy, together with papers Nos. 21, 24, 29, 38, 63 and its enclosures, and a manuscript No. 79, according to the enumeration of the prize commissioner. These last are sent because they are similar to the papers in the bag, both in character and in personal connection, though perhaps in themselves unimportant. They certainly are of no importance whatever to any question which can arise in this court.

The clerk will transmit to the Secretary of the Navy copies of Captain Bailey's two letters of 29th January, 1862, to the Judge of the Southern District of New York, of Captain McKean's letter of 18th February, 1862, to Acting Master Rogers, and of the affidavit of the prize master Mr. Tuck, and will send to the Secretary of the Navy and the Secretary of State, each a copy of this order, from the minutes of this court.

### ORDER AND OPINION.

And now, January 21, 1863, the clerk of the court reporting that of the proceeds of the sale of the said cargo there remains for distribution in the registry of the court the sum of $14,412.40, and it appearing to the Court that the said steamer Calhoun has not been brought into this court for adjudication, but has been from the time of capture detained by the Government of the United States and employed in its naval service, and the said steamer having been appraised under the authority of the captors, and val-

ued by the officers of the proper department of the said government at the sum of $29,000, which appraisement and valuation the Attorney of the United States assents to and adopts; and the Government of the United States having transmitted to the clerk of the court the amount of the said appraisement, the Court said that in its opinion, though the Congress of the United States might, under the law of nations have conferred upon the district courts jurisdiction as prize courts, in cases like the present, as to vessels not within the limits of their respective districts, yet this jurisdiction has not, by the legislation in force, been actually so vested in the said district courts, and that inasmuch as the said steamer does not appear to have been within this judicial district, the Court cannot in a proceeding simply at the suit of the United States, receive the said sum of $29,000 to be adjudicated upon as a substitute for the said steamer. The Court added that there would not have been any difficulty in taking cognizance of and adjudicating the case of the vessel, if a claimant showing himself to be the party entitled to restitution in case of her liberation, had here intervened, and expressly or impliedly assented that the said $29,000 should be considered as her substitute in court. The case, the Court said, would then in principle have been like that of the Admittance reported in 13 Howard, 498, and in 18 Howard, 111, where the jurisdiction ultimately exercised was, in truth, local. But here no conversion of the vessel in question into money which is within the jurisdiction of the court as a substitute for her, has occurred so as to bind such a party.

The Court therefore directs the said clerk to return the said sum to the proper department of the said government. But the Court is of opinion, that for the purpose of equalization, in the distribution between the Government of the United States and the naval captors, the fact that the said government has the actual and exclusive use and enjoyment of the said vessel, valued as aforesaid, may be taken into consideration, and that for this purpose of equalization the said vessel and cargo may be considered as together a single

subject of capture. Wherefore the said naval captors are entitled of right as between them and the United States, to a priority of payment to the extent of one-half of the sum of the values of the said vessel and cargo, which sum is $43,412.40, and one-half thereof is $21,706.20, exceeding by $7,293.80 the amount now in court.

The decree therefore is that the whole of the net fund in court being $14,412.40 belongs of right and is payable to the naval captors to the exclusion of the United States without prejudice to any further claim of the said captors to be hereafter asserted in this court or elsewhere, to such additional portion of the proceeds of said vessel, if she should hereafter be condemned in this or any other competent tribunal, as may of right be receivable by these parties. It is further ordered that the said sum of $14,412.40 be paid forthwith into the treasury of the United States for distribution among the naval captors according to the statutes in that behalf provided.